IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2009

## MARCUS ROGERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-00607    John T. Fowlkes, Jr., Judge**

**No. W2008-00819-CCA-R3-PC  - Filed June 25, 2009**

The petitioner, Marcus Rogers, appeals from the post-conviction court's denial of post-conviction relief as it relates to the petitioner's convictions on one count of second degree murder and two counts of attempted second degree murder.  On appeal, the petitioner argues that he received the ineffective assistance of counsel.  Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Jason Poyner, Memphis, Tennessee, for the appellant, Marcus Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton and John A. Irvine, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I. BACKGROUND

The petitioner was indicted on charges of first degree murder and attempted first degree murder.  The jury convicted the petitioner of second degree murder and attempted second degree murder and the trial court sentenced him to thirty-four years incarceration.  On direct appeal, the petitioner's convictions were affirmed. *See State v. Marcus Rogers,* No. W2002-01416-CCA-R3-CD, 2003 WL 21729422 (Tenn. Crim. App., at Jackson, July 17, 2003), *perm. app. denied* (Tenn. Dec. 22, 2003).  The following is a summary of the facts of the case taken from this court's opinion on direct appeal:

> On July 18, 2000, Shalawn Lane, aka "Q," Charles Horton, Jr., aka "Main Main," and the [Petitioner], aka "Big Prep," were engaged in a "three man crap

game" at Lane's apartment. After Horton lost all of his money, he went outside, where he joined Rickey King, aka "Little Rickey," who was sitting in a lawn chair in front of the apartment. The [Petitioner] and Lane continued to gamble. Lane "won all the money" on this particular occasion; however, he owed the [Petitioner] money from a prior crap game. The [Petitioner] requested Lane to pay him the money owed from his winnings, but Lane refused, stating that he would not pay the [Petitioner] until Friday as they had agreed. Lane then told the [Petitioner] to go "get some more money and come back and gamble." According to Lane, the [Petitioner] moved towards him as if "he was trying to take the money back." Lane drew his pistol, shot at the floor, and told the [Petitioner] to leave. After the [Petitioner] left, Lane joined Horton and King outside. Thirty minutes to an hour later, the [Petitioner] returned in a vehicle driven by "Tee-Tee." FN1. The [Petitioner] exited from the passenger side of the vehicle and began shooting at Lane, Horton, and King. Lane returned fire. Dwight Simpson observed the incident from the laundromat located next to the apartment complex. Simpson saw the [Petitioner] arrive and the shooting begin. He then took cover. After the shooting stopped, he went to see if anyone had been injured. All three individuals suffered gunshot wounds, and Horton, who was shot in the upper back, died as a result of his injuries.

> FN1. This individual is not identified in the record by any other name.

At trial, the [Petitioner] testified that he returned to the apartment to get his money. According to the [Petitioner], he was fired upon when he arrived at the apartment, and then he returned fire. He stated that he was carrying a gun because he had been carjacked before and he had the gun when the men were playing dice. He claimed that upon his return, he had no intention of shooting anyone and he felt like he was defending himself.

On January 23, 2001, the [Petitioner] was indicted for the first degree murder of Charles Horton, Jr., the attempted first degree murder of Rickey King, and the attempted first degree murder of Shalawn Lane. After a trial by jury, the [Petitioner] was convicted of second degree murder and two counts of attempted second degree murder. At the sentencing hearing, the [Petitioner] received an effective thirty-four-year sentence.

*Id.* at *1. The petitioner filed a timely pro se petition for post-conviction relief. Thereafter, post-conviction counsel was appointed, an amended petition was filed, and an evidentiary hearing was held. At the hearing, the following pertinent testimony was presented. Trial counsel testified that he was retained to represent the petitioner on charges of first degree murder and attempted first degree murder. Counsel recalled that he attempted to defend the petitioner against the charges by arguing that the facts of the case only supported a finding of a lesser included offense. Counsel stated that he objected to the state's use of a gun as demonstrative evidence because the gun the petitioner described did not have the same type of canister magazine as the gun presented by the state for demonstrative use at the trial. According to counsel, the state presented two guns for use at the

trial and used the larger gun to demonstrate to the jury how the petitioner used the gun. The state did not contend that the gun presented at the trial was the actual weapon used by the petitioner and "explained to the jury that [it] was just a demonstration weapon[.]" Counsel agreed that he did not refer to his previous objection to the state's introduction of a gun as demonstrative evidence in the motion for a new trial filed on behalf of the petitioner. However, counsel stated that his exclusion of this objection in the motion for a new trial was a conscious decision and not an oversight. Counsel explained that he reached this decision after he reviewed case law and the ruling of the trial court determining the demonstrative evidence could be used by the state. Counsel stated he also thought that any prejudice to the petitioner had been nullified by the jury's verdict of a lesser included offense. Additionally, counsel interviewed jurors after the trial and determined that they "didn't care what the weapon looked like, . . . [but ] couldn't get around the fact that [the petitioner] came back and [ ] did the shooting."

The petitioner's counsel on direct appeal also testified at the post-conviction hearing. He stated that he had been practicing law for twenty-six years and that the majority of his practice was criminal law. Appellate counsel testified that in preparing the direct appeal, he reviewed the motion for a new trial prepared by trial counsel. Appellate counsel recalled that he discussed the trial with trial counsel and also reviewed the transcript for "errors or defects in the trial." Appellate counsel identified two errors which he presented as issues on appeal. Both issues related to the sufficiency of the evidence. Appellate counsel stated he would have raised the issue of the state's use of demonstrative evidence if he thought the issue had merit. The petitioner did not testify at the post-conviction hearing. After taking the matter under advisement, the post-conviction court entered an order denying the petition for post-conviction relief.

## II. ANALYSIS

On appeal, the petitioner avers that trial counsel was ineffective in failing to argue in the motion for a new trial that the trial court erred in allowing the state's use of a weapon as demonstrative evidence and thereby failed to preserve the issue for appeal.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under

prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id.* at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.*

In the instant case, the record does not support that trial counsel's performance was deficient nor has the petitioner demonstrated prejudiced. The order of the post-conviction court states the following findings:

> At the post-conviction relief hearing, [trial counsel] testified that he did not raise the demonstrative evidence issue for several reasons. After trial, [trial counsel] reviewed case law and determined that [the trial court] ruled correctly. Further, he believed Petitioner's conviction of a lesser-included offense nullified the prejudice argument. A juror told him after trial that the demonstration did not affect the jury's decision. . . . [Appellate counsel] testified that he did not remember thinking anything was not included in the Motion for New Trial that needed to be included. Petitioner presented no evidence that the demonstrative evidence issue should have been included in the Motion for New Trial or that failure to do so fell below the objective reasonable standard of care. (footnotes omitted).

We agree with the post-conviction court's findings and conclude that the petitioner failed to prove that counsel's failure to include the admission of demonstrative evidence as an issue in the motion for a new trial fell below an "objective standard of reasonableness under prevailing professional standards." *See Strickland*, 466 U.S. at 688. Additionally, the petitioner has failed to show he was prejudiced by counsel's failure to preserve the issue for appeal. *Id.* at 694. To prevail on this claim, the petitioner needed to show that on direct appeal, this court would have determined that the trial court's admission of the demonstrative evidence was reversible error. The petitioner has not shown that the admission of the demonstrative evidence was improper or that the court committed reversible error. Therefore, the petitioner has not demonstrated prejudice. The petitioner is not entitled to relief.

CONCLUSION

-4-

Based on the aforementioned reasoning and authorities, we conclude that the petitioner has failed to prove his allegations of fact by clear and convincing evidence.  Thus, we affirm the denial of post-conviction relief.

 

_____

J.C. McLIN, JUDGE